**E-filed 6/21/06**

KERSTIN ARUSHA (SBN 182624)
MOSES DIAZ (SBN 224572)
STEPHANIE A. STEVENS (SBN 236034)
**FAIR HOUSING LAW PROJECT**
111 West Saint John Street, Suite 315
San Jose, California 95113
Telephone:  408-280-2402
Facsimile:   408-293-0106

Counsel for plaintiff CARABELLE BENSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE)

| | |
|---|---|
| **CARABELLE J. BENSON,**<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>**INDYMAC BANCORP, INC., EXECUTIVE FINANCIAL HOME LOAN CORPORATION, RON FATTAL, MICHELLE ROBERTS, JOSEPH J. RANGEL, CAROLINA CONTRERAS, KENDALL R. SUMMERS** and **DOES 1 TO 50,** inclusive,<br><br>　　　　　　Defendants. | Case No. C 06-01835 JF/PVT<br><br>**NOTICE OF SETTLEMENT & PLAINTIFF'S REQUEST FOR DISMISSAL OF COMPLAINT** |

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT plaintiff Carabelle J. Benson hereby dismisses her entire Complaint with prejudice against defendants IndyMac Bancorp, Inc, Executive Financial Home Loan Corporation, Ron Fattal, Michelle Roberts, Jospeh J. Rangel, Carolina Contreras, Kendall R. Summers and Does 1 to 50, pursuant to a Settlement Agreement executed by the parties June 1, 2006, and in consideration of Defendants re-conveyance of the property at 4502 Sonata Way to Plaintiff. See Exhibit 1, Settlement Agreement attached.

　　　　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

Dated: June 14, 2006

FAIR HOUSING LAW PROJECT

_____
STEPHANIE STEVENS
Counsel for plaintiff CARABELLE BENSON

IT IS SO ORDERED.

6/21/06

JUDGE JEREMY FOGEL

UNITED STATES DISTRICT COURT

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") entered into this __ day of May, 2006, is made by and between the following parties (each individually referred to as a "Party," and collectively referred to as "the Parties"): CARABELLE J. BENSON ("Benson"); EXECUTIVE FINANCIAL HOME LOAN CORP. DBA EXECUTIVE HOME LOAN, A CALIFORNIA CORPORATION ("Executive"); and INDYMAC BANK, F.S.B. ("IndyMac").

### RECITALS

A. On or about February 11, 2005, Benson executed a Deed of Trust ("DOT") and Adjustable Rate Note (the "Note") and related loan agreement and disclosures (collectively referred to as "the Loan Documents"), pursuant to the terms of which Benson promised to pay Executive $111,000.00, plus interest, in monthly payments, beginning on April 5, 2005 (for purposes of this Agreement, this amount is referred to as "the Loan"). The Loan, Loan Number 120990054, was secured by real property, the address of which is commonly described as 4502 Sonata Way, City of San Jose, California 95111, and has an A.P.N. of 684-10-098.

B. Thereafter, the Loan was sold by Executive to IndyMac under separate agreement. The IndyMac Loan Servicing Number is 1005359953. Benson was unaware of any arrangement between Executive and IndyMac and believed and believes that the loan was underwritten by IndyMac.

C. Benson rescinded the loan or desires to rescind the Loan. On or about March 9, 2006, Benson filed a complaint for Damages, Injunctive Relief, And Declaratory Relief; Demand for Jury Trial against IndyMac, Executive, and others, in the United States District Court of the Northern District of California, Case Number C06-1835 ("the Complaint").

D. The Parties now wish to settle, compromise and resolve all claims alleged by Benson in the Complaint and/or in any way arising out of or otherwise related to the Loan Documents and/or the Loan except as may be provided below. The purpose of this Agreement is to record the settlement terms reached by and between the Parties.

### SETTLEMENT TERMS

**NOW, THEREFORE,** in consideration of the mutual promises, covenants and agreements provided herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

713474.02/LA
14384-059/5-25-06/ams/drz

1.      Benson has applied for and has been approved for a loan, the proceeds of which shall in part be used to pay IndyMac as set forth below. Within 10 days of executing this Agreement Benson shall cause to be deposited into Escrow # 11439969-296-DLD instructions or other documents instructing the Escrow Company to distribute the sum of $100,084.68 to IndyMac upon close of escrow subject to the deposit into escrow, by IndyMac, of all documents necessary to re-convey all property interests they have in the Sonota Way property listed in the Recitals. Within that same 10 day period IndyMac shall cause to be deposited into Escrow # 11439969-296-DLD all documents necessary to re-convey all property interests they have in the Sonota Way property listed in the Recitals together with instructions or other documents instructing the Escrow Company to record such re-conveyance upon the close of escrow and payment to IndyMac of the sum of $100,084.68. Within ten (10) business days after IndyMac's re-conveyance is recorded, Benson will dismiss the Complaint in its entirety as to all parties with prejudice, with each party bearing their own attorney's fees and costs except as provided in paragraph 15. In the event Benson's new loan, which will be used to satisfy her tender obligation, is not funded by the currently selected lender due to circumstances beyond the control of the parties hereto, the parties shall have an additional period of thirty (30) days to complete the transaction above. The thirty day period shall run from the date on which notice of a putative new lender is provided to the escrow agent or twenty (20) days from the date of this agreement whichever is earlier. If IndyMac is not paid in full by the foregoing date, Benson will have waived its claims in the Complaint and shall dismiss the Complaint with prejudice.

2.      Except as provided herein, each Party mutually releases, acquits and forever discharges the other and its affiliates, and their respective officers, directors, partners, agents, employees, representatives, shareholders and attorneys, and each of their respective parents, subsidiaries, heirs, successors and assigns, from any and all claims, demands, debts, liabilities, obligations, contracts, agreements, accounts, defenses, suits, actions, causes of action, and other claims for relief of any kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, which the releasing Party may have, has had, or which may hereafter accrue against any of the Parties being released, for or by reason of any matter, cause or thing whatsoever which originated in whole or in part, on or before the date hereof, arising out of, or in connection with, or relating to, in whole or in part, directly or indirectly, the Loan and/or the Loan Documents or any acts or omissions of any of the Parties being released, or any other person, corporation, partnership or other entity, in connection with the Loan and/or Loan Documents, or any act or failure to act in relation thereto.

3.      Except for the obligations, rights, claims, defenses otherwise set forth in this Agreement (and particularly those set forth in paragraph 4 below), each party expressly waives any and all rights under California Civil Code § 1542 and any similar statute or rule. California Civil Code § 1542 provides as follow:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH A CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

4. Notwithstanding any term of this Agreement, including the releases set forth in paragraphs 2 and 3 above, nothing in this Agreement shall constitute or be construed to be a waiver and/or release of claims that IndyMac may have against Executive or which Executive may have against IndyMac arising out of or in connection with the sale of the loan by Executive to IndyMac. Executive and IndyMac agree that their respective claims as to each other and related to or arising out of the Loan, the Loan Documents and the sale of the Loan are not released and are preserved. Furthermore, the Parties agree that the releases set forth in paragraphs 2 and 3 above are not operative until *all* of the Parties sign this Agreement and perform all of their obligations under this Agreement.

5. Each Party warrants and represents that it has full power and authority, under its corporate articles, charters, bylaws, trust agreements, and partnership agreements, if any, and under applicable law, to make and perform all releases, obligations and undertakings in this Agreement.

6. Each Party warrants and represents that it is the sole and lawful owner of all rights, title and interest in and to all rights and claims released herein, and that it has not heretofore assigned or transferred to any other person or entity all or any part of any matter, right, or claim released under this Agreement.

7. Benson warrants and represents that her obligations under this Agreement do not violate any agreement with a third party to which she is bound.

8. Each Party's obligations, covenants and promises under this Agreement are expressly conditioned upon the performance of the other Party's obligations, covenants and promises.

9. This Agreement shall be binding on and shall inure to the benefit of the Parties as well as their respective heirs, executors, administrators, representatives, successors, assigns, agents, servants, employees, attorneys, parents, subsidiaries and predecessors.

10. This Agreement shall be interpreted, construed and enforced in accordance with and governed by the provisions and laws of the State of California.

11. The prevailing party in any dispute relating this Agreement and/or its enforcement shall be entitled to its reasonable attorneys' fees and costs from the other Party.

12. After consulting with their respective attorneys, the Parties acknowledge that this Agreement, including each term and provision is fair and reasonable. Each Party has been represented by an attorney who materially has participated in creating, negotiating, preparing, and interpreting this Agreement. Therefore, this Agreement and each term and provision hereof should not be construed against any Party.

13. The Parties to this Agreement do not intend to create any third party beneficiaries hereto. Moreover, the Parties agree that this Agreement shall not be construed or used to establish liability or as an admission of liability in connection with any proceeding, in particular that which already has been filed by Benson and any claims between Executive and IndyMac which survive this Agreement. Neither this Agreement nor any Party's course of conduct pursuant hereto should be construed to establish rights in any person or entity not a Party to this Agreement.

14. This Agreement may be executed in counterparts. Each Party agrees that a facsimile copy of a signature on this Agreement shall be treated as an original signature, that a facsimile copy of each Parties' signature is acceptable to each Party, and that a facsimile copy of a signature shall bind the Parties' respective rights and obligations under this Agreement to the same extent as if such signatures were original signatures.

15. Except as to the claims for fees and costs as between IndyMac and Executive, each Party to this Agreement will bear its own attorneys' fees and costs for the negotiation, preparation and execution of this Agreement, and for the claims and actions which prompted this Agreement.

16. In the event one or more provisions of this Agreement is declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality, and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

17. This Agreement represents the whole and complete agreement by and between the Parties and shall not be changed, modified, or abridged, except by a subsequent written agreement executed by the Parties hereto.

DATED: ~~May~~ June 1, 2006

CARABELLE J. BENSON

By: _Carabelle J. Benson_
Name: _Carabelle J. Benson_
Title: Its _Borrower_

DATED: May 16, 2006

EXECUTIVE FINANCIAL HOME LOAN
CORP. DBA EXECUTIVE HOME LOAN, A
CALIFORNIA CORPORATION

By: _____
Name: Michael Dikranvash
Title: Its CFO

DATED: May ___, 2006

INDYMAC BANK, F.S.B.

By: _____
Name: _____
Title: Its _____

DATED: June ___, 2006

EXECUTIVE FINANCIAL HOME LOAN CORP. DBA EXECUTIVE HOME LOAN, A CALIFORNIA CORPORATION

By: _____
Name: _____
Title: Its _____

DATED: June 2, 2006

INDYMAC BANK, F.S.B.

By: _____
Name: Ignacio Gomez
Title: Its VP Repurchase